Gregory H. Horowitz
Cynthia S. Betz
McCarter & English, LLP
100 Mulberry St., Four Gateway Center
Newark, New Jersey 07102
Tel:  973-622-4444
Fax: 973-624-7070
ghorowitz@mccarter.com
cbetz@mccarter.com

Michael T. Williams
N. Reid Neureiter
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Tel:  303.244.1800
Fax:  303.244.1879
williams@wtotrial.com
neureiter@wtotrial.com

*Attorneys for Plaintiff General Electric Company*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GENERAL ELECTRIC COMPANY,

        Plaintiff,

v.

LIG INSURANCE CO., LTD.,

        Defendant.

Civil Action No.

---

## COMPLAINT AND JURY DEMAND

---

General Electric Company ("GE"), 3135 Easton Turnpike, Fairfield, Connecticut 06828, by and through its attorneys, McCarter & English, LLP and Wheeler Trigg O'Donnell LLP, and by way of this Complaint against LIG Insurance Co., Ltd. ("LIG"), LIG Tower, Teheran-ro 117, Gangnam-gu, Seoul 135-550, Korea, hereby complains as follows:

## INTRODUCTION

1.      This is a lawsuit against an insurance company for failure to live up to its contractual obligations. GE is a defendant in a class action lawsuit pending in the United States District Court for the Eastern District of Michigan ("*Hennigan* Action"). The lawsuit alleges that microwave ovens sold by GE are defective and have caused damage to property other than the microwaves themselves. GE is an additional insured under an insurance policy issued by LIG. LIG initially paid a portion of GE's defense in the *Hennigan* Action. But LIG subsequently stopped funding GE's defense and denied all coverage without a reasonable basis. LIG also has refused to provide GE with a copy of the relevant insurance policy. LIG has breached its contract of insurance. GE has been damaged and continues to suffer damage as it defends itself in the *Hennigan* Action. GE has paid hundreds of thousands of dollars in attorney fees that should have been paid by LIG. GE brings this lawsuit seeking actual and consequential damages for LIG's breach. GE also seeks a declaration that LIG has a continuing obligation to fund GE's defense of the *Hennigan* Action.

## PARTIES, JURISDICTION, AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1332 in light of the existence of complete diversity of citizenship and the amount in controversy exceeding the sum of seventy-five thousand dollars ($75,000), excluding interest and costs.

3.      Plaintiff GE is a New York corporation with its principal place of business at 3135 Easton Turnpike, Fairfield, Connecticut 06828.

4.      Defendant LIG is a Korean insurance company with its principal place of business in Seoul, Republic of Korea.

5.      On October 1, 2005, LIG created Leading Insurance Services, Inc. f/k/a LIG Management Services, Inc. ("LIS") in the United States. LIG did this with the intent of building an insurance underwriting organization specifically for the Korean-American business community. LIS is domiciled in Fort Lee, New Jersey, and is the U.S. manager of LIG's branch office which specializes in Asian-American commercial insurance covering risks in, among other places, New Jersey, focusing on Korean-American and Chinese-American business.

6.      Venue is proper in this District pursuant to 28 U.S.C. section 1391(b)(3), because LIG does business in New Jersey, and this Court has personal jurisdiction over LIG based on LIG's continuous and systematic business presence in New Jersey, including LIG's underwriting of risks in New Jersey.

## THE INDEMNITY OBLIGATIONS ASSUMED BY LG ELECTRONICS

7.      LG Electronics, Inc. ("LGE") executed a manufacturing contract dated August 19, 1999 ("1999 Supply Contract") requiring LGE to provide certain liability insurance coverage for GE and its affiliates in connection with LGE's agreement to supply GE with LGE-manufactured microwave ovens for resale in the United States. The GE microwave ovens at issue in the *Hennigan* Action were designed and manufactured by LGE and sold to

GE pursuant to the 1999 Supply Contract. The 1999 Supply Contract provides as follows in

pertinent part:

    4.    <u>Warranty, Product Recall, Product Liability and Indemnification</u>

\*    \*    \*

D.  LGE will at all times indemnify GEAA (which will control its own
defense) and GEAA's customers against any actual or threatened liability,
claim, cost, or expense (including reasonable attorneys' fees and other
reasonable dispute resolution costs):

(i) Involving death or injury to any person or damage to any property
(including economic or financial loss) that actually or allegedly results directly
or indirectly from (a) any failure of Products to comply with the description or
specifications set forth in a [purchase order]; (b) LGE's negligence in
designing, manufacturing, or otherwise handling Products; (c) defects in
Products giving rise to claims based on strict or product liability; or (d) failure
of Products to perform in accordance with their intended use; . . .

(iii) LGE shall maintain at its own expense product liability insurance in the
amount of at least U.S. $2,000,000 for injury or death of one person in any
accident, and an additional U.S. $5,000,000 for injury or death of more than
one person in any accident, . . . . naming GEAA as a co-insured.

8.    Exhibit A to the 1999 Supply Contract provides, in pertinent part,

(12) INDEMNIFICATION AND INSURANCE . . .

(B) Supplier will further defend, indemnify and hold Buyer harmless
from and against any and all claims, damages or losses by third parties
for injury or death to persons or damages to property to the extent
caused by Supplier's negligent performance or failure to perform fully
under this Contract. . . .

(17) PRODUCT LIABILITY – Supplier agrees to protect, defend, hold
harmless, indemnify and reimburse Buyer and its distributors, dealers, affiliates
and customers, during the term of this Contract and thereafter from and against
any liability claim, cost, or expense (including, but not limited to, attorney fees,
overhead, and court costs) arising out of actual or alleged death or injury to any
person, or damage to tangible property, by whomever suffered, arising out of
(a) any failure of the Products to comply with applicable specifications

(functional, design or otherwise), warranties, and certifications under this Contract; or (b) the negligence of Supplier in design, manufacture or otherwise with respect to the Products or parts therefor; or (c) claims based on strict or product liability relating to the Product; or (d) failure to warn or inadequate warnings and/or instructions.

9.      LGE was required under the 1999 Supply Contract to procure liability insurance coverage and name GE entities as additional insureds under those policies, by virtue of their role as purchasers and resellers of LGE-manufactured products.

## THE POLICIES ISSUED BY MITSUI SUMITOMO INSURANCE, USA INC.

10.      Mitsui Sumitomo Insurance USA Inc. ("Mitsui Sumitomo") issued commercial general liability insurance policy number GL2122226 to named insured LG Electronics, Inc. Policy number GL2122226 was initially effective from May 31, 2006, to June 1, 2007, and it was effective thereafter for consecutive annual periods from June 1, 2007, to June 1, 2010 ("Mitsui Sumitomo Policies").

11.      Respectively, the Mitsui Sumitomo Policies have a liability limit of $1,000,000 each occurrence and $2,000,000 aggregate.

12.      The general liability coverage afforded by the Mitsui Sumitomo Policies is based in part on ISO Form CG 00 01 (12/04 ed.), according to a coverage letter transmitted from Mitsui Sumitomo's third-party administrator, Mitsui Sumitomo Marine Management (USA), Inc., to GE. A true and correct copy of the coverage letter ("Mitsui Coverage Letter") letter is attached hereto as Exhibit 1.

13.      The Mitsui Sumitomo Policies include an endorsement entitled, "Additional Insured—Vendors" ("Mitsui Vendors Endorsement"). The form is based on form CG 20 15 07 04.

14.     Under the Vendors Endorsement, GE is an additional insured with respect to bodily injury or property damage arising out of the performance or use of LGE-manufactured products, which were distributed or sold in the regular course of GE's business.

15.     The Mitsui Sumitomo Policies provide that Mutsui Sumitomo will pay those sums that the insured, including an additional insured, becomes legally obligated to pay as damages because of bodily injury or property damage to which the policies apply.

16.     The Mitsui Sumitomo Policies also provide that Mutsui Sumitomo will have the right and duty to defend the insured, including an additional insured, against any suit seeking those damages even if the allegations of the suit are groundless, false, or fraudulent.

17.     The Mitsui Sumitomo Policies afford occurrence-based liability coverage, meaning that they apply to bodily injury and property damage when (i) the bodily injury or property damage is caused by an occurrence and (ii) the bodily injury or property damage occurs during the policy period.

18.     The Mitsui Sumitomo Policies define "property damage" to mean (i) physical injury to tangible property, including all resulting loss of use of that property or (ii) loss of use of tangible property that is not physically injured.

19.     On information and belief, all premiums due have been timely paid for the Mitsui Sumitomo Policies.

### THE UMBRELLA LIABILITY POLICY ISSUED BY LIG INSURANCE

20.     LIG issued umbrella liability policy number 2009-1937445 ("LIG Policy") to named insureds LG Electronics Inc., LG Electronics USA, Inc., LG Electronics Alabama,

Inc., LG Electronics Canada, Inc., and Zenith Electronics Corporation. The LIG Policy was effective from June 1, 2009, to June 1, 2010.

21.     LIG has repeatedly refused to provide a copy of the LIG Policy to GE or its representatives, despite GE's repeated requests for a copy of that policy. On information and belief, the LIG Policy contains no provision authorizing LIG to decline an additional insured's request to receive a copy of the LIG Policy.

22.     The LIG Policy has liability limits of $8,000,000 each occurrence and in the aggregate.

23.     On information and belief, the liability coverage afforded by the LIG Policy is in excess over the limit of liability insurance of the Mitsui Sumitomo Policies.

24.     The LIG Policy contains a vendors endorsement ("LIG Vendors Endorsement") stating that "[a]ll vendors as evidenced by written agreement with the Insured" are additional insureds under the LIG Policy.

25.     In a letter to GE ("LIG Coverage Letter"), LIG has acknowledged that "GE was considered an additional insured under the underlying Mitsui Sumitomo policy on the basis of" the Mitsui Vendors Endorsement, which is "identical" to the LIG Vendors Endorsement. (Ex. 2 at 7.) A true and correct copy of the LIG Coverage Letter is attached as Exhibit 2. The LIG Coverage Letter is undated. The LIG Coverage Letter, however, was transmitted on or about April 1, 2013.

26.     In the LIG Coverage Letter, LIG acknowledged that, "by virtue of the definition of 'Persons Insured' under the LIG Policy, coverage is also afforded to 'any additional insured included in the underlying insurance . . . ." (*Id.*) "According to the plain

language" of the LIG Policy, "GE will qualify as an additional insured to the extent that it is a vendor as evidenced by a written agreement." (*Id.*)

27.    The 1999 Supply Contract is an agreement establishing that GE qualifies as an additional insured by virtue of the LIG Vendors Endorsement and other provisions of the LIG Policy.

28.    LIG acknowledged in the LIG Coverage letter that "GE would qualify as an additional insured under the LIG [Policy] pursuant to the terms of" the LIG Vendors Endorsement. (*Id.*)

29.    On information and belief, the LIG Policy provides that LIG will pay those sums that the insured, including an additional insured, becomes legally obligated to pay as damages because of personal injury (including bodily injury) or property damage to which the policies apply.

30.    On information and belief, the LIG Policy also provides that LIG will have the right and duty to defend the insured, including an additional insured, against any suit seeking those damages even if the allegations of the suit are groundless, false, or fraudulent.

31.    On information and belief, the LIG Policy affords occurrence-based liability coverage, meaning that its applies to personal injury (including bodily injury) and property damage when (i) the bodily injury or property damage is caused by an occurrence and (ii) the bodily injury or property damage occurs during the policy period.

32.    On information and belief, the LIG Policy defines property damage to mean (i) physical injury to or destruction of tangible property, including loss of use thereof at any time

resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by a covered occurrence.

33.     On information and belief, all premiums due have been timely paid for the LIG Policy.

## THE *HENNIGAN* ACTION

34.     On June 8, 2010, Timothy Hennigan, Aaron McHenry, and Christopher Cocks filed a Third Amended Class Action Complaint ("*Hennigan* Complaint") in the United States District Court for the Eastern District of Michigan, Case No. 2:09-cv-11912-VAR-MJH. A true and correct copy of that complaint is attached hereto as Exhibit 3.

35.     The *Hennigan* Complaint named GE as a defendant.

36.     The *Hennigan* Plaintiffs are seeking certification of a nationwide consumer class and alleging manufacturing and design defects in GE-brand microwave ovens manufactured since January 2000.

37.     GE strongly denies the allegations made by the *Hennigan* Plaintiffs against GE. Those allegations are related here for the purpose of pleading GE's entitlement to insurance coverage under the LIG Policy. By recounting those allegations in this Complaint, GE is not agreeing with or endorsing them. To the contrary, GE denies them.

38.     The *Hennigan* Plaintiffs have alleged that GE sold them "Spacemaker" or "Over-the-Range" microwave ovens.

39.     The *Hennigan* Plaintiffs have alleged that the microwaves have "defects" that "pose an unreasonable risk of harm to consumers and their property."

40.     The *Hennigan* Plaintiffs have alleged that they and others in the putative class have suffered "property damage due to the smoke and/or fire caused by the defective microwave ovens. The defects were the direct, proximate, and foreseeable cause of damages incurred by [the *Hennigan*] Plaintiffs and members of the [putative] Class." Such damage has allegedly affected property other than the microwaves themselves.

41.     For example, "[a]s a result" of an alleged defect in a GE-branded microwave, "Mr. Hennigan suffered smoke-related damage . . . ."

42.     The *Hennigan* Plaintiffs have alleged that one of the microwaves caused "damages to [a] house and contents of the house. . . .'"

43.     The *Hennigan* Plaintiffs have alleged that GE is aware of "numerous" incidents "regarding microwaves that spontaneously turned on, caught on fire," and caused damage to "consumers' homes."

44.     In the *Hennigan* Action, the *Hennigan* Plaintiffs are seeking to recover compensatory, exemplary, and statutory damages against GE as a result of purported damage to property other than to the microwaves themselves.

45.     The *Hennigan* Plaintiffs have alleged that the property damage they and their putative class members have suffered resulted from supposed defects in microwave ovens manufactured by LGE and sold by GE.

46.     The *Hennigan* Complaint sets forth six claims for relief: (1) Strict Products Liability, (2) Express Warranty, (3) Implied Warranty of Merchantability, (4) Violation of the Magnuson-Moss Warranty Act, (5) Violation of State Consumer Protection Acts, and (6) Unjust Enrichment.

## COVERAGE

47.     GE is an additional insured under the LIG Policy.

48.     The *Hennigan* Action is a covered claim or suit within the meaning of the LIG Policy.

49.     The *Hennigan* Action alleges that GE is legally obligated to pay damages to the *Hennigan* Plaintiffs because of personal injury (including bodily injury) and property damage.

50.     The purported liability of GE that has been alleged in the *Hennigan* Action arises from GE's role as vendor of LGE within the meaning of the LIG Vendors Endorsement, including as a result of GE's sale and distribution of LGE-manufactured microwaves.

51.     The purported liability of GE, under the *Hennigan* Complaint's allegations, is liability that has allegedly been caused by occurrences within the meaning of the LIG Policy.

52.     Those occurrences, and the bodily injuries and property damage alleged in the *Hennigan* Complaint, allegedly took place during the LIG Policy's effective period.

53.     The applicable limit of insurance of the LIG Policy has not been exhausted.

54.     There are no exclusions in the LIG Policy that bar coverage for GE or for the *Hennigan* Action.

55.     All conditions precedent to coverage have been satisfied.

56.     On information and belief, the Mitsui Sumitomo Policies have been exhausted, thereby triggering the LIG Policy and requiring it to respond.

## LIG'S CONDUCT

57.     GE timely tendered the defense and indemnity of the *Hennigan* Action to LGE on March 24, 2010. The defense of the *Hennigan* Action was also timely tendered to LIG.

58.     In the LIG Coverage Letter, LIG acknowledged that GE is an additional insured under the LIG Policy, agreed that the *Hennigan* Action triggered LIG's duty to defend GE, and agreed to provide a defense to GE in the *Hennigan* Action.

59.     With LIG's approval, the law firm of Dickinson Wright PLLC, 500 Woodward Avenue, Suite 4000, Detroit, MI 48226 ("Dickinson Wright"), defended GE and continues to defend GE in the *Hennigan* Action.

60.     The litigation expenses incurred as a result of Dickinson Wright's representation have all been reasonable and necessary costs of defending the *Hennigan* Action.

61.     After acknowledging its duty to defend, LIG began paying the defense invoices of Dickinson Wright.

62.     Subsequently, LIG delayed and did not timely pay Dickinson Wright's invoices.

63.     LIG delayed responding to, or did not respond to, communications from GE attempting to prompt LIG to pay on a current basis Dickinson Wright's invoices.

64.     Eventually, LIG ceased paying Dickinson Wright's invoices altogether.

65.     On June 13, 2014, Roderick T. Dunne of Karbal, Cohen, Economou, Silk & Dunne, LLC informed GE in a letter ("Denial Letter") that LIG had decided to deny coverage entirely for the *Hennigan* Action.

66.     The Denial Letter is based entirely on statements made by the *Hennigan* Plaintiffs in a procedural motion for class certification that did not change any of the *Hennigan* Plaintiffs' allegations or dismiss any of their claims against GE.

67.     The Denial Letter indicates that LIG will not provide a defense to GE in the *Hennigan* Action beyond amounts it had paid through January 30, 2014.

68.     The Denial Letter indicates that LIG will not indemnify GE for any legal obligation to pay damages arising from the *Hennigan* Action.

69.     The Denial Letter did not assert that GE is not an additional insured under the LIG Policy.

70.     The Denial Letter did not assert that any of the allegations in the *Hennigan* Complaint have been changed or altered since the date when LIG acknowledged its duty to defend GE. Nor did the Denial Letter cite or rely on any allegations in the *Hennigan* Complaint to justify LIG's decision to deny its defense and indemnity obligations to GE under the LIG Policy.

71.     Both before and after the Denial Letter, the *Hennigan* Complaint has remained the same. No causes of action or claims have been dismissed from the *Hennigan* Complaint.

72.     LIG has not provided a complete defense to GE in the *Hennigan* Action.

73.     GE asked LIG to provide a copy of the LIG Policy, to permit GE to evaluate its rights thereunder.

74.     LIG has repeatedly refused to provide GE with a copy of the LIG Policy.

75.     When GE continued to press for answers and information, LIG told GE to stop communicating with LIG about the *Hennigan* Action.

13

76.     Mitsui Sumitomo never denied coverage to GE for the *Hennigan* Action.

**FIRST CLAIM FOR RELIEF:**
**DECLARATORY JUDGMENT**

77.     GE incorporates the previous allegations as if set forth in full herein.

78.     There is a real, substantial and justiciable issue in controversy between the parties hereto with respect to insurance coverage under the LIG Policy in relation to the *Hennigan* Action.

79.     This is an action for declaratory judgment pursuant to 28 U.S.C. section 2201(a) for the purpose of determining a question in actual controversy between the parties.

80.     A judicial determination and a declaration of the rights and obligations of the parties are necessary and appropriate at this time.

81.     GE requests that the Court declare that LIG has an obligation under the LIG Policy to fully defend GE from and against the *Hennigan* Action.

82.     GE further requests that the Court declare that LIG has an obligation under the LIG Policy to fully indemnify GE from and against any and all obligations to pay damages for bodily injury or property damage arising from the *Hennigan* Action

83.     GE is entitled to an order of the Court declaring, adjudicating, and clarifying the rights and responsibilities of GE and LIG, substantially as follows:

    LIG has an obligation under the LIG Policy to pay benefits for, and fully to defend GE from or against any claims asserted in the *Hennigan* Action and to fully indemnify GE from or against any obligation to pay damages for bodily injury or property damage arising from the *Hennigan* Action.

## SECOND CLAIM FOR RELIEF:
## BREACH OF CONTRACT (DUTY TO DEFEND)

84.     GE incorporates the previous allegations as if set forth in full herein.

85.     The LIG Policy is a contract containing certain valid and enforceable provisions.

86.     GE has not breached the LIG Policy.

87.     Under the LIG Policy, LIG owed a duty, *inter alia*, to defend GE against the *Hennigan* Action.

88.     LIG, through its acts and omissions described herein, has breached its duties of defense under the LIG Policy.

89.     As a direct and proximate result of such actions and/or failures by LIG, GE has incurred damages in an amount to be proven at trial, including but not limited to fees of defense counsel and other costs of defense covered by the LIG Policy in excess of $75,000, exclusive of interest and costs, all owed but unpaid by LIG.

90.     LIG's wrongful, unjustified, and unreasonable breach of the duty to defend precludes and prevents it from denying or disclaiming indemnity coverage to GE in connection with the *Hennigan* Action.

## THIRD CLAIM FOR RELIEF:
## ANTICIPATORY BREACH OF CONTRACT (DUTY TO INDEMNIFY)

91.     GE incorporates the previous allegations as if set forth in full herein.

92.     LIG has overtly, expressly, and clearly manifested its intent not to render the performance agreed upon in the LIG Policy for the indemnification of GE.

15

93.     LIG has repudiated its indemnity obligations to GE under the LIG Policy by a present, positive, unequivocal refusal to perform.

94.     LIG, through its acts and omissions described herein, has breached anticipatorily its duties of indemnity under the LIG Policy.

95.     As a direct and proximate result of such actions and/or failures by LIG, GE has incurred damages in an amount to be proven at trial.

96.     LIG's wrongful, unjustified, and unreasonable anticipatory breach precludes and prevents it from denying or disclaiming indemnity coverage to GE in connection with the *Hennigan* Action.

**FOURTH CLAIM FOR RELIEF:**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**AND BAD FAITH BREACH OF INSURANCE CONTRACT**

97.     GE incorporates the previous allegations as if set forth in full herein.

98.     Under the LIG Policy, LIG owed a duty to defend GE against claims such as the *Hennigan* Action.

99.     Under the LIG Policy, LIG owed a duty to indemnify GE against claims such as the *Hennigan* Action.

100.    LIG breached its duties of defense and indemnity owed to GE by conduct that was unreasonable.

101.    LIG had no reasonable basis for denying of coverage to GE in connection with the *Hennigan* Action.

102.    LIG had no reasonable basis to refuse GE's requests for a copy of the LIG Policy.

103.     LIG acted deliberately, willfully and wantonly, and with malice when it refused GE's requests for a copy of the LIG Policy. On information and belief, a motive for LIG's refusal was to prevent GE from reading the LIG Policy and thereby discovering that LIG's conduct is not authorized by the LIG Policy.

104.     LIG, through its acts and omissions described herein, has breached the implied covenant of good faith and fair dealing and has committed insurance bad faith.

105.     As a direct and proximate result of such actions and/or failures by LIG, GE has incurred damages in an amount to be proven at trial, including but not limited to fees of defense counsel and other costs of defense covered by the LIG Policy in excess of $75,000, exclusive of interest and costs, all owed but unpaid by LIG.

106.     LIG's bad faith breach of insurance contract precludes and prevents it from denying or disclaiming indemnity coverage to GE in connection with the *Hennigan* Action.

### FIFTH CLAIM FOR RELIEF:
### ESTOPPEL

107.     GE incorporates the previous allegations as if set forth in full herein.

108.     LIG acknowledged its duty to defend GE in the *Hennigan* Action in the LIG Coverage Letter on April 1, 2013 based solely on the allegations of the *Hennigan* Complaint and its interpretation of the LIG Policy.

109.     Neither the *Hennigan* Complaint nor the LIG Policy has materially changed since April 1, 2013.

110.     LIG did not reserve any right, or give GE any notice, in the Coverage Letter that it may attempt to deny its duty to defend on a basis other than the *Hennigan* Complaint and the LIG Policy.

17

111.    GE detrimentally relied on LIG's representation that it owed a duty to defend based on the LIG Policy and the *Hennigan* Complaint.

112.    LIG partially performed its obligations under the LIG Policy before ceasing to perform those obligations.

113.    LIG has denied GE's requests for a copy of the LIG Policy without any basis in law or the terms of the LIG Policy.

114.    GE has detrimentally relied on LIG's statements regarding the content of the LIG Policy.

115.    LIG is estopped from relying on any provision of the LIG Policy that it did not disclose to GE upon request.

116.    LIG is estopped from relying on any procedural motions filed in the *Hennigan* Action to deny coverage that LIG did not reserve the right to rely on.

117.    LIG, through its acts and omissions described herein, is subject to estoppel.

118.    LIG, by its breach of the duty to defend, is prevented and estopped as a matter of law from denying indemnity coverage to GE in connection with the *Hennigan* Action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff General Electric Company respectfully prays for judgment as follows:

1.      An order of the Court declaring, adjudging, and proclaiming the rights of GE and the responsibilities of LIG in substantially the following form:

LIG has an obligation under the LIG Policy to pay benefits for, and fully to defend GE from or against any claims asserted in the *Hennigan* Action and to fully indemnify GE

from or against any obligation to pay damages for bodily injury or property damage arising from the *Hennigan* Action.

2.     An order of the Court declaring, adjudging, and proclaiming that LIG is precluded or prevented as a matter of law from denying indemnity to GE for the *Hennigan* Action on account of its breach of its duty to defend GE in that action.

3.     An order of the Court declaring, adjudging, and proclaiming that LIG is estopped from denying indemnity to GE for the *Hennigan* Action on account of its breach of its duty to defend GE in that action.

4.     Compensatory and consequential damages in an amount to be proven at the time of trial.

5.     An award of costs and reasonable fees as permitted by statute, common law, court rule, or other law, including coverage counsel costs and fees.

6.     Pre-judgment interest, post-judgment interest, and any other interest recoverable under applicable law.

7.     Such other and further relief to GE as the Court may deem proper.

## JURY DEMAND

GE demands a jury trial on all issues so triable.

Dated:  November 25, 2014                    Respectfully submitted,


<u>/s/ Gregory H. Horowitz</u>
Gregory H. Horowitz
Cynthia S. Betz
McCarter & English, LLP
100 Mulberry St., Four Gateway Center
Newark, New Jersey 07102
Tel:  973-622-4444
Fax: 973-624-7070
ghorowitz@mccarter.com
cbetz@mccarter.com

Michael T. Williams
N. Reid Neureiter
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Tel:  303-244-1800
Fax:  303-244-1879
williams@wtotrial.com
neureiter@wtotrial.com


*Attorneys for Plaintiff General Electric Company*

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>

I hereby certify that to the best of my knowledge, information and belief, the matter in controversy in this action is not the subject of any other action pending in any court or of a pending arbitration proceeding.

DATED: November 25, 2014

*s/* Gregory. H. Horowitz

Gregory H. Horowitz
McCarter & English, LLP